# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

**UNITED STATES OF AMERICA**   **:**
                                  **:**
      **v.**                **:**        **CRIMINAL ACTION FILE NO.**
                                    **:**        **1:10-CR-127-MHS/AJB**
**LEE M. HUTLEY,**           **:**
                                    **:**
          **Defendant.**      **:**

## ORDER FOR SERVICE OF
## <u>REPORT AND RECOMMENDATION</u>

Attached is the Report and Recommendation ("R&R") of the United States Magistrate Judge made in accordance with 28 U.S.C. § 636(b)(1) and N.D. Ga. CrR. 58.1(A)(3)(a), (b).  A copy of the R&R and this order shall be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections to the R&R within **fourteen (14)** days of service of this Order.  Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party.  *See United States v. Gaddy*, 894 F.2d 1307, 1315 (11th Cir. 1990).  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court.  If no objections are filed, the

AO 72A
(Rev.8/8
2)

R&R may be adopted as the opinion and order of the District Court and any appellate review of factual findings will be limited to a plain error review.  *United States v. Slay*, 714 F.2d 1093 (11th Cir. 1983).

Pursuant to 18 U.S.C. § 3161(h)(1)(H), **the above-referenced fourteen (14) days allowed for filing objections is EXCLUDED from the computation of time under the Speedy Trial Act ("the Act"), whether or not objections are actually filed.**  If objections to this R&R are filed, the Clerk is **DIRECTED** to **EXCLUDE** from the computation of time all time between the filing of the R&R and the submission of the R&R, along with any objections, responses and replies thereto, to the District Judge.  18 U.S.C. § 3161(h)(1)(D), (H); *Henderson v. United States*, 476 U.S. 321, 331 (1986); *United States v. Mers*, 701 F.2d 1321, 1337 (11th Cir. 1983).  The Clerk is **DIRECTED** to submit the R&R with objections, if any, to the District Court after expiration of the above time period.

**IT IS SO ORDERED and DIRECTED**, this  27th  day of   August  , 2010.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CRIMINAL ACTION FILE NO.** |
| | : | **1:10-CR-127-MHS/AJB** |
| **LEE M. HUTLEY,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES MAGISTRATE JUDGE'S**
**FINAL REPORT AND RECOMMENDATION**

Before the Court is Defendant Lee M. Hutley's motion to suppress evidence related to the Defendant's testimony at a job-related disciplinary hearing.  [Doc. 18].[1] The parties agreed that no evidentiary hearing was needed, and that the matter could be submitted on stipulated facts and the parties' briefs.  [Doc. 19].  Defendant filed a brief in support of his motion, [Doc. 21], to which the government responded.  [Doc. 22]. Defendant also filed a reply brief.  [Doc. 24].  With briefing concluded, the Court turns to the merits of the motion.   For the reasons that follow, the undersigned **RECOMMENDS** that the motion be **DENIED**.

---

[1]      Defendant also orally moved to suppress these statements at the pretrial conference.  [*See* Dkt. Entry 4/12/2010].  The motion was supplemented/perfected by the pending motion, [Doc. 18].

*Facts*

The indictment, [Doc. 1], charges that on March 6, 2009, Hutley, who then was a detention officer at the Fulton County Jail, used excessive force against a handcuffed an inmate (identified by the initials "J.L.") by spraying him with pepper spray, (Count One), and striking J.L., (Count Two), both in violation of 18 U.S.C. § 242.  The indictment also charges Hutley with writing a false incident report describing his physical interaction with J.L. with the intent to impede, obstruct and influence the investigation of a matter within the jurisdiction of a department or agency of the United States, in violation of 18 U.S.C. § 1519, (Count Three).

The parties stipulated to the following facts:

1.      Defendant Lee Hutley was a Detention Officer at the Fulton County Sheriff's Office at all times relevant to the issues raised by his Motion to Suppress Statements.

2.      As such, Defendant Lee Hutley was a "permanent classified employee" and subject to the Fulton County Civil Service Act and Personnel Regulations.

3.      Pursuant to the "Act" an Appointed Authority may dismiss, suspend or otherwise discipline a classified employee.

4.      The Fulton County Sheriff's Office through Edward G. Long, Chief Deputy, notified Defendant Hutley of pending disciplinary action.

5.      Chief Deputy Long issued a letter to Defendant Hutley on September 15, 2009, notifying Defendant Hutley "this is to notify you that I am considering recommending your dismissal. . . ." The letter further states that an opportunity is afforded Defendant Hutley to respond "orally, in writing, or in person." The letter further states "you must contact my office at 404-612-5486 to confirm your scheduled appointment. If you fail to meet with me or otherwise respond, your dismissal will be effective at the close of business on Wednesday, Sept. 23, 2009." (Attached as Exhibit 1 [Doc. 20-1]).

6.      Defendant Hutley personally met with Chief Deputy Long on or about September 22, 2009, and orally responded. The government is not aware of the substance of any statement that Defendant Hutley made to Chief Deputy Long during this meeting. Accordingly, the government does not plan to present any such evidence during its case-in-chief.

3

7.      Defendant Hutley received a letter from Fulton County Sheriff Theodore Jackson on September 26, 2009, dismissing Defendant Hutley. (Attached as Exhibit 2 [Doc. 20-3]).

8.      Defendant Hutley appealed his dismissal on September 30, 2009. (Attached as Exhibit 3 [Doc. 20-4]).

9.      On March 18, 2010, Defendant Hutley appeared before the Fulton County Personnel Board where he gave testimony and was subject to cross examination of the Fulton County Attorney.  Defendant Hutley was not advised of the possible legal consequences of testifying before the Fulton County Personnel Board.

[Doc. 20 at 1-3].

Exhibit 1 to the parties' stipulated facts is the September 15, 2009, letter from Chief Deputy Long to Hutley.  The letter provides, in material part, as follows:

> The Fulton County Civil Service Act and Personnel Regulations provide that an Appointing Authority may dismiss, suspend without pay, demote, or otherwise discipline a permanent classified employee for cause upon furnishing written notice to the employee setting forth in detail the reason(s) for such action and providing the Fulton County Personnel Board with a copy of the written notice.

> In accordance with the above authority and based on the information currently available to me regarding case #09033, this is to notify you that

4

I am **considering recommending your dismissal** for the cause(s) as specified below.   Before I make my decision, I will give you an opportunity to present your version of the occurrence or otherwise respond to me orally, in writing, or in person.  **I have reserved Tuesday, September 22, 2009 at 3:30 pm** to meet with you.  <u>**You must contact my office at 404-612-5486 to confirm your scheduled appointment.**</u>  If you fail to meet with me or otherwise respond, **your dismissal will be effective at the close of business on Wednesday, September 23, 2009.**

. . .

If it is the final decision to dismiss, suspend, demote or otherwise discipline you, and you feel that this action is based on personal, political or religious reasons, or that it is not otherwise justified, PR-900-1 gives you the right to appeal to the Fulton County Personnel Board by answering the charges in writing and requesting a hearing.  Any such request must be received by the Fulton County Personnel Board within ten working days after you are notified of the final decision.

[Doc. 20-1 at 1, 3 (emphasis in original)].

Sheriff Jackson's termination letter provided:

As a result of your meeting with Chief Deputy Edward G. Long on Tuesday, September 22, 2009 regarding case #09033, I have considered all of the facts presented to me and I have decided to dismiss you in accordance with the letter you received dated September 15, 2009.

[Doc. 20-2 at 1].

The record also contains the transcript from the March 18, 2010, Fulton County Personnel Board ("FCPB") hearing.  [*See* Doc. 22-2 at 1-24].  Hutley appeared with counsel.  [*Id.* at 1].  The transcript reflects the presiding judge stating without any prior

5

testimony or explanation[2], "[T]his is the Appellant[']s opportunity to go forward."   [*Id.*].   The next 17 pages reflect questioning of Hutley by his lawyer.  [*Id.* at 1-17].  He was then cross-examined by an unidentified Fulton County attorney.  [*Id.* at 17-22].  Hutley then was asked a series of questions by an unidentified FCPB member.  [*Id.* at 22-24].

*Contentions of the Parties*

Hutley contends that his statements were not voluntarily obtained because they were acquired under threat of his removal from his employment with the Fulton County Sheriff's Department.  [Doc. 18 at 2-3].  He also contends that his Fifth Amendment right to be free from compelled self-incrimination was violated when, as a public employee, he was forced to choose between making statements - which exposed him to criminal liability - and not making statements - which exposed him to dismissal from his position.  He argues that the Supreme Court recognized in *Garrity v. New Jersey*, 385 U.S. 493 (1967), that this "choice" is unduly coercive for purposes of the Fifth Amendment, and that where, as here, a public employee is confronted with such a choice, the statements made by the public employee cannot be used against him in his

---

[2]      The transcript reflects that prior to the testimony, the board members and hearing participants watched a video of the incident between Hutley and the inmate J.L.  [Doc. 22 at 8, 18].

subsequent criminal trial.  [Doc. 21 at 3-4].  Hutley further argues that he is entitled automatically to use and derivative use immunity as to these statements obtained under coercion, even if he did not contemporaneously seek immunity at the time he was confronted with having to make that choice.  [*Id.* at 4-5 (citing *United States v. Vangates*, 287 F.3d 1315, 1321 (11th Cir. 2002))].

Hutley next contends that he was subject to classic *Garrity*-coercion when Chief Deputy Long's September 15 letter informed him that "[i]f you fail to meet with me or otherwise respond, your dismissal will be effective at the close of business on Wednesday, Sept. 23, 2009," [*id.* (quoting Doc. 20-1 at 1)], which he describes as " 'the Hobson's choice of either making an incriminating statement or being fired,' " (quoting *United States v. Comancho*, 739 F. Supp. 1504, 1515 (S.D. Fla. 1990) (Marcus, J.)). As a result, he contends, he automatically was covered by *Garrity* immunity.  [*Id.*].

Hutley then argues that the coercion exerted against him on September 15 continued up through his appeal hearing before the FCPB since his dismissal was not final until he pursued his right to an appeal.  He also argues that he received no warnings about his *Garrity* rights before making the statements during the hearing.  He submits that, as a result, any statements he made to the FCPB also are immunized and must be excluded from his upcoming criminal trial.  [*Id.* at 6].

7

In opposition, the government states that its prosecution team has not exposed itself to any statements Hutley made during the course of any internal investigation undertaken by the Fulton County Jail, and similarly the prosecution team is unaware of any statements made by Hutley in his meeting with Chief Deputy Long. [Doc. 22 at 4]. It therefore sees no *Garrity* issue presented by any statements Hutley made prior to his FCPB hearing.

As to the statements made by Hutley at the FCPB proceeding, the government argues that Hutley's voluntary testimony at a proceeding he requested after he already was advised he was terminated is not protected under *Garrity* since *Garrity* seeks to prevent coerced statements. That is, it contends that no governmental sanction flowed from Hutley's voluntary statements following his voluntary appeal of his dismissal:

> Because Defendant voluntarily appealed his termination and voluntarily testified at the resulting hearing, the *Garrity* authority is inapposite to Defendant's position. This is true, even when Defendant had to make a strategic choice between invoking his Fifth Amendment right - and thus likely ensuring that his termination would stand - or waiving his right in order to attempt to regain his employment by offering explanatory testimony.

[Doc. 22 at 6; *see also id.* at 2 ("Defendant voluntarily testified at the hearing about the incidents.")]. The government analogizes Defendant's situation to that of the corporate vice president in *United States v. Kordel*, 397 U.S. 1 (1970), a civil case involving the

8

forfeiture of property.  In that case, the government brought parallel civil and criminal cases against a company and its officers for misbranding drugs.  The corporate officer, while represented by counsel, answered civil interrogatories without asserting his Fifth amendment rights.  The Supreme Court held that the government properly could use these answers in the corporate officer's criminal trial, rejecting the officer's complaint that he was placed in the difficult position of refusing to answer, and thereby risk forfeiture; five false answers, and risk perjury; or offer truthful answers and face forfeiture.  Instead, the *Kordel* Court stated, the officer could have invoked his Fifth Amendment rights.  *Id.* at 7-8.  The government argues that the same reasoning is applicable in this case, where Hutley voluntarily testified with counsel at his side.  [Doc. 22 at 7].

The government also relies upon a series of federal circuit court cases which it claims supports its argument that the FCPB hearing statements are not excludable under *Garrity*.  For example, in *Harrison v. Wille*, 132 F.3d 679 (11th Cir. 1998), the court held that the terminated public employee failed to demonstrate that his termination was due solely to the exercise of Fifth amendment rights where there was a lengthy investigation and other evidence incriminated him.  [Doc. 22 at 7-8].  In *Hoover v. Knight*, 678 F.2d 578 (5th Cir. 1982), the court held that failure to continue the appeal

9

of a discharged police officer until resolution of criminal charges against him was not mandated by the Fifth Amendment, particularly where the officer invoked his right against self-incrimination but there was direct evidence tending to confirm the officer's involvement in the misbehavior.  [*Id.* at 8].  The government also discussed the *Ryan v. Montana*, 580 F.2d 988 (9th Cir. 1978) and *Lynott v. Story*, 929 F.2d 228 (6th Cir. 1991), cases, which both held that the Fifth Amendment does not require that a state postpone probation/parole revocation hearings pending resolution of criminal charges arising out of the same conduct which is the subject of a revocation proceeding.  [*Id.* at 9-11].

Hutley replies that the coercion from his meeting with Chief Deputy Long did not stop with that meeting but continued on into the FCPB hearing - - he faced the choice of submitting to an interrogation or losing his job.  He argues that the hearing was specifically for the purpose of appealing his discharge and observes that the only way he could regain his job was to testify at the FCPB hearing.  [Doc. 24 at 1-2].  He argues that the FCPB benefitted from its knowledge of Hutley's statements to Chief Deputy Long even if the government claims it is unaware of what was said in that initial meeting.  Since he is entitled to derivative use immunity, he contends that the statements to the FCPB also must be suppressed from his criminal trial.  [*Id.* at 2].  He

10

then states that if the statements are not excluded, he will move for a *Kastigar* hearing at which the government would have to prove that the statements it seeks to use at the trial were not derived from his tainted statements to Chief Deputy Long.  [*Id.* at 2-3].

Hutley also argues that the coercion a public employee may face under *Garrity* is not limited to merely the threat of dismissal but extends to being foreclosed from regaining one's job.  [*Id.* at 4-5].  He states that is it "undisputed that [he] believed he had to make statements to Chief Deputy Long and the Board or he would lose his job forever."  [*Id.* at 5].  He also contends that his belief was objectively reasonable because, as the government acknowledged, he had to make the strategic choice between invoking his Fifth Amendment rights or waive them in order to try to regain his job.  [*Id.* at 5 (quoting Doc. 22 at 6)].  He concludes by arguing that it does not matter for purposes of *Garrity* whether he made his statements before or after he was terminated because he still was struggling to keep his job.  [*Id.* at 5].

*Discussion*

The Fifth Amendment provides that no person "shall be compelled to be a witness against himself."  U.S. CONST. amend. V.  The amendment not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer official questions in any

11

other proceeding, civil or criminal, where the answers might incriminate him in future criminal proceedings.   *Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973) (citing *McCarthy v. Arndstein*, 266 U.S. 34, 40 (1924)).   That is, the object of the amendment " 'was to insure that a person should not be compelled, when acting as a witness in any investigation, to give testimony which might tend to show that he himself had committed a crime.' "   *Id.* (quoting *Counselman v. Hitchcock*, 142 U.S. 547, 562 (1892)).

In *Garrity v. New Jersey*, 385 U.S. 493 (1967), former police officers were convicted of obstruction of justice in connection with the fixing of traffic tickets.  The officers had been questioned about the charges by the state attorney general.  They were warned, pursuant to a state statute, that their answers might be used against them, and that they could refuse to answer, but that if they did so they would be dismissed. *Id.* at 495 n.1.  The officers answered; over their objection, the answers they gave were used against them in criminal prosecutions.   The Supreme Court held that the statements had been coerced from the officers by the threat of dismissal, and therefore reversed the convictions.  In so concluding, the Court stated:

> The choice imposed on petitioners was one between self-incrimination or job forfeiture.  Coercion that vitiates a confession . . . can be mental as well as physical. . . .  Subtle pressures . . . may be as telling

12

as coarse and vulgar ones.  The question is whether the accused was deprived of his free choice to admit, to deny, or to refuse to answer. . . .

. . .

The choice given petitioners was either forfeit their jobs or incriminate themselves.  The option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or to remain silent.

*Garrity*, 385 U.S. at 496-97 (citations and internal punctuation omitted).  As a result,

the Court held that "the protection of the individual under the Fourteenth Amendment

against coerced statements prohibits use in subsequent criminal proceedings of

statements obtained under threat of removal from office, and that it extends to all,

whether they are policemen or other members of our body politic."  *Id.* at 500.

Following *Garrity*, the Supreme Court has recognized that testimony is

compelled in a manner forbidden by the purpose and intent of the self-incrimination

clause when the state requires testimony under threat of certain noncriminal sanctions.

*See, e.g., Lefkowitz v. Turley*, 414 U.S. 70  (cancellation of state contracts and bar from

future contracts for five years for refusal to waive Fifth Amendment privilege when

called to testify concerning state contracts); *Gardner v. Broderick*, 392 U.S. 273 (1968)

(discharge from police force for failure to waive privilege against self-incrimination,

13

without immunity, before grand jury); *Uniformed Sanitation Men Assoc. v. Comm'r of Sanitation*, 392 U.S. 280 (1968) (discharge of city employees for refusal to sign waivers of immunity before grand jury or for invoking their constitutional privilege against self-incrimination before investigation commissioner who had advised them that their answers could be used against them in subsequent proceeding violated constitutional privilege); *Spevack v. Klein*, 385 U.S. 511 (1967) (plurality opinion of four justices) (disbarment improper where it was based on lawyer's refusal to produce records which were presumed to be protected by privilege against self-incrimination).

These cases, which find compulsion in sanctions that are at least one step removed from a direct compulsion to testify in a criminal case, were reaffirmed in *Lefkowitz v. Cunningham*, 431 U.S. 801 (1977). The guidelines which *Cunningham* provides for determining when impermissible compulsion guides the Court's decision in this case. In *Cunningham*, a New York state statute required persons holding office in a political party to testify before a grand jury about matters related to their official duties. Party officers were forced to waive immunity from use of such grand jury testimony in any later prosecution on pain of removal from office and disqualification from holding any public or party office for five years thereafter. The *Cunningham* Court held that the statutory scheme compelled testimony in

14

violation of the Fifth Amendment because it imposed disabilities for failure to execute a waiver of use immunity.  The Court emphasized that by asserting his privilege against self-incrimination the defendant forfeited a powerful and sought-after position, lost the economic benefit of potential future employment, and was deprived of certain associational rights guaranteed by the First Amendment.  *Id.* at 807-08.  Thus, the *Cunningham* Court confined its holding to situations where "refusal to waive the Fifth Amendment privilege leads automatically and without more to imposition of sanctions."  *Id.* at 808 n.5 (distinguishing *Baxter v. Palmigiano*, 425 U.S. 308 (1976)); *see also Lynott v. Story*, 929 F.2d 228, 231 (9th Cir. 1991) (quoting *Cunningham*, *id.*); *Ryan v. State of Montana*, 580 F.2d 988, 991 (9th Cir. 1978) (Kennedy, J.) (same and noting the "decision whether or not to testify was a strategic choice.  No sanction followed automatically from his exercise of the privilege to remain silent.  Rather, the absence of exculpatory information which Ryan might have furnished if he had decided to testify 'was only one of a number of factors' which might figure in the probation revocation and sentencing determinations.").

These principles have been applied in circuit court cases.  For example, in *Wiley v. Mayor & City Council of Baltimore*, 48 F.3d 773 (4th Cir. 1995), police officers and a police association brought a civil rights suit against an assistant state's attorney

alleging that officers' constitutional rights were violated when they were compelled to take a lie detector test upon threat of job loss. Because the officers had not been asked to waive their privilege against self-incrimination, and the questions posed to them were narrowly job-related, the court held that the officers' Fifth Amendment rights had not been violated. *Id.* at 777. In explaining its decision, the court drew on *Gardner* and *Uniformed Sanitation Men*, noting that the language in those cases "strongly indicates that forcing a public employee to answer potentially incriminating job-related questions does not implicate the Fifth Amendment unless the employee is also compelled to waive his privilege." *Id.*

Similarly, in *Hill v. Johnson*, 160 F.3d 469 (8th Cir. 1998), a sheriff's department officer was terminated after he refused to answer questions about the disappearance of a photograph of a beaten detainee and failed to show up for a polygraph examination. The sheriff's department officer alleged that the sheriff had violated his Fifth Amendment rights when he discharged him for refusing to answer the questions and failing to take the polygraph examination. *Id.* at 471. The Eighth Circuit disagreed, concluding that the officer's allegations failed to allege the violation of a clearly established Fifth Amendment right. *Id.* Relying upon *Garrity*, *Gardner*, and *Uniformed Sanitation Men*, the court explained that the Fifth Amendment is violated

16

"only by the combined risks of both compelling the employee to answer incriminating questions and compelling the employee to waive immunity from the use of those answers." *Id.* (citing *Harrison v. Wille*, 132 F.3d 679, 682 (11th Cir. 1998)). Thus, a public employer may put a public employee to the choice of either testifying about the performance of official duties or forfeiting her job "[a]s long as a public employer does not demand that the public employee relinquish the employee's constitutional immunity from prosecution." *Id.*  Accordingly, since the officer had not been asked to waive his privilege against self-incrimination, his dismissal did not violate the Fifth Amendment. *Id.*

In *Harrison*, the Plaintiff was a deputy sheriff who fell under suspicion for thefts from the sheriff's office evidence room.  On three occasions he was interviewed following receipt of *Garrity* rights, i.e., that his statements were for internal investigation use only and would not be used against him in a criminal prosecution. *Harrison*, 132 F.3d at 681.  After his third statement, he was placed on administrative leave and then advised that he would be the subject of a predisciplinary conference.  At the conference, he was advised of his *Garrity* rights, but told that no statements were being compelled.  Harrison's lawyer advised him to assert his Fifth amendment rights, and Harrison complied.  After the conference, Harrison was

17

suspended without pay.  As was his right, Harrison filed a timely appeal, and his lawyer obtained a postponement of the appeal pending completion of the ongoing internal and criminal investigations.  Harrison then was advised of other instances of misconduct, and at the second predisciplinary hearing, again invoked his Fifth Amendment rights.  Harrison was terminated.  The administrative appeal again was postponed at his request.  Thereafter, the criminal investigation terminated without any charges being brought against Harrison.  *Id.* at 681.  Thereafter, at the hearing appealing his termination, Harrison was provided *Garrity* rights and provided information in his own defense.  His termination was ratified.  *Id.* at 681-82.

Harrison sued, claiming violations of his civil rights.  The district court granted summary judgment in favor of the defendants.  On appeal the Eleventh Circuit affirmed.  The court rejected Harrison's claim that he was terminated for exercise of his Fifth Amendment rights at the two predisciplinary hearings.  The court noted that *Garrity*, *Gardner* and *Turley* meant that an " 'employee's rights are imperilled only by the combined risks of both compelling the employee to answer incriminating questions and compelling the employee to waive immunity from the use of those answers.' "  *Harrison*, 132 F.3d at 682 (quoting *Arrington v. County of Dallas*, 970 F.2d 1441, 1446 (5th Cir. 1992)).  Therefore, the *Harrison* Court held, a public

18

employee could not be terminated solely for the exercise of his Fifth Amendment rights, but considered along with other evidence, the adverse inference may be drawn from an employee's exercise of his Fifth Amendment rights. *Id.* at 683. The court held that Harrison had to show that he was compelled to waive his Fifth Amendment rights, but the " 'government's mere failure to tender immunity cannot amount to an attempt to compel a waiver of immunity.' " *Id.* (quoting *Arrington*, 970 F.2d at 1446). The court additionally reiterated that when a person has " 'a free choice to admit, deny or refuse to answer[, t]his is full vindication of the [F]ifth [A]mendment privilege against self-incrimination.' " *Id.* (quoting *Hoover v. Knight*, 678 F.2d 578, 581 (5th Cir. 1982)) (punctuation altered). Since Harrison was unable to show that he was, at the same time, both compelled to testify and forced to waive his Fifth Amendment right against self-incrimination and was not terminated solely for exercising his right to remain silent, he asserted no civil rights violation. *Id.*

Typically, the Fifth Amendment's protection against self-incrimination is not self-executing, meaning that to be protected, a witness must assert that right specifically. *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984) (holding that a witness's answers "are not compelled within the meaning of the Fifth Amendment unless the witness is required to answer over his valid claim of privilege"). An exception to this

19

rule arises when assertion of the Fifth Amendment privilege " 'is penalized so as to foreclose a free choice to remain silent and compel incriminating testimony.' " *United States v. Vangates*, 287 F.3d 1315, 1320 (11th Cir. 2002) (quoting *Murphy*, 465 U.S. at 434 (internal citation and punctuation omitted)).

> Therefore, the Fifth Amendment permits a witness to refuse to answer any question put to him "unless and until he is protected at least against the use of his compelled answers and evidence derived therefrom in any subsequent criminal case in which he is a defendant." *Lefkowitz v. Turley*, 414 U.S. 70, 78[ ] (1973) (citing *Kastigar v. United States*, 406 U.S. 441[ ] (1972)). That protection extends to any "proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Murphy*, 465 U.S. at 426[ ] (quoting *Turley*, 414 U.S. at 77[ ].

> This protection is often needed by public employees, for whom Fifth Amendment law attempts to strike a balance between the privilege against self-incrimination and the state's interest in obtaining information necessary for the advancement of governmental functions. *See Turley*, 414 U.S. at 81[ ]. Thus, a public employee may not be coerced into surrendering his Fifth Amendment privilege by threat of being fired or subjected to other sanctions, *see Erwin v. Price*, 778 F.2d 668, 669 (11th Cir. 1985) (citation omitted), and cannot be forced to choose "between self-incrimination or job forfeiture," *Garrity*, 385 U.S. at 496[ ]. Indeed, "the protection . . . against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office." *Id.* at 500[ ]; *see also Hester v. Milledgeville*, 777 F.2d 1492, 1495 (11th Cir. 1985) ("[A] governmental unit which requires an employee to make potentially incriminating statements may not burden the employee's [Fifth Amendment right] by threatening to discipline or discharge the employee if he or she refuses to waive it."). More specifically,

20

> *Garrity* protects police officers from having to choose between cooperating with an internal investigation and making potentially incriminating statements. Immunity under *Garrity* prevents any statements made in the course of the internal investigation from being used against the officers in subsequent criminal proceedings.

*In re Federal Grand Jury Proceedings*, 975 F.2d 1488, 1490 (11th Cir. 1992).

*Vangates*, *id.*

The Court will apply these guidelines to the facts of Hutley's case.

    1.    *The September 15, 2009, interview with Chief Deputy Long*

Although the government asserts that it has no knowledge of any statements Hutley made to Chief Deputy Long and is not intending to introduce any such statements at Hutley's trial, Hutley contends that any unconstitutional coercion applied to get him to make those statements to Long taints his subsequent FCPB testimony. As a result, the Court addresses whether any statements made to Chief Deputy Long were unconstitutionally coerced such that *Garrity* prohibits direct and derivative use.

Hutley contends that Chief Deputy Long's letter presented him with an "either/or situation" in which he was forced to make a statement or answer Long's questions or face certain discharge, and that such a "Hobson's choice" in the context of a public employee in reality was no choice at all under *Garrity*. Hutley reads *Garrity* and its

21

progeny too broadly.  *Garrity*'s protections are not invoked solely because a public employee is faced with the uncomfortable choice of attempting to explain his conduct or remain silent, thereby risking that the government employer might terminate or discipline him based on independent evidence of wrongdoing.  All of the cases discussed above demonstrate that the Fifth Amendment is violated only when the employee is forced to give up his right to remain silent without the concomitant guaranty of use/derivative use immunity as to those compelled statements in a subsequent criminal proceeding.

There is no proof that chief Deputy Long compelled Hutley to waive or otherwise give up his Fifth Amendment right to remain silent upon penalty of being disciplined or terminated.  First, the record is silent as to any governing statute or regulation which required Hutley to forego his constitutional rights against self-incrimination or else be terminated.  *See United States v. Indorato*, 628 F.2d 711, 715 (1st Cir. 1980) (concluding that police officer's testimony was not compelled because there existed no regulation or ordinance requiring that officer be terminated or otherwise sanctioned if he invoked his Fifth Amendment privilege) (discussed favorably in *Vangates*, 287 F.3d at 1322 n.7).  Nor is there any evidence that Hutley was advised orally or in writing that if he exercised his right to remain silent and thus

22

failed to offer an explanation, he would be terminated.  Instead, Chief Deputy Long

advised Hutley in the September 15 letter:

> I am considering recommending your dismissal for the cause(s) as specified below.  Before I make my decision, I will give you an opportunity to present your version of the occurrence or otherwise respond to me orally, in writing, or in person.

[Doc. 20-1 at 1].  This letter does not present the Hobson's choice which *Garrity*

prohibits.  All it demonstrates is that Long already had made up his mind to recommend

discharge, but he was giving Hutley an opportunity to present his version of the

occurrence or "otherwise respond to me orally, in writing, or in person."  Simply put,

Hutley was not being forced to talk to Long, and he was not advised that his failure to

speak with Long solely would have led to his discharge.  There apparently were

grounds independent of Hutley's statements which caused Long to recommend his

discharge.  As such, this case is akin to *Harrison*.

These conclusions do not end the inquiry, since where there is no direct threat

of termination for failing to waive one's Fifth Amendment rights, the Eleventh Circuit

directs that the Court

> determine whether the officer's statements were compelled by examining h[is] belief and, more importantly, the objective circumstances surrounding it.  Thus, for h[is] statements to be protected under *Garrity*, the officer "must have in fact believed [the] statements to be compelled on

23

threat of loss of job and this belief must have been objectively reasonable." *United States v. Friedrick*, 842 F.2d 382, 395 (D.C. Cir. 1988). Put differently: "First, the defendant must have subjectively believed that he was compelled to give a statement upon threat of loss of job. Second, this belief must have been objectively reasonable at the time the statement was made." [*United States v.*] *Camacho*, 739 F. Supp. [1504,] 1515 [(S.D. Fla. 1980) (Marcus, J.)] (citing *Friedrick*, 842 F.2d at 395).

*Vangates*, 287 F.3d at 1321-22.[3]

---

[3]     Not all courts agree with the test set out in *Friedrick* and adopted by the Eleventh Circuit in *Vangates*. In *McKinley v. City of Mansfield*, 404 F.3d 418 (6th Cir. 2005), the Sixth Circuit rejected the *Friedrick/Vangates* formulation:

> We decline to require proof that McKinley reasonably believed he would be fired. It is sufficient, we think, for a jury to conclude that he reasonably believed that substantial penalties were likely to result from his refusal to answer questions during the second interview; although job termination is surely a "substantial penalty," so, too, are other employer actions, such as ordering a demotion or suspension. *See Dwan v. City of Boston*, 329 F.3d 275, 279 (1st Cir. 2003) (observing that to prove his incriminating statements were compelled, an employee must show that he was "threatened or forewarned of [a] sanction for refusing to testify"). Relevant to the question whether McKinley reasonably believed he faced a threat of substantial penalties are the totality of the circumstances surrounding the second interview and the circumstances of the first interview, to the extent they are probative of McKinley's state of mind, and whether that state of mind was reasonable, during the second.

*Id.* at 436 n.20. Of course, this Court is bound by the Eleventh Circuit's *Vangates* test. *Turquitt v. Jefferson County, Ala.*, 137 F.3d 1285, 1287 (11th Cir. 1998) (stating that "district court was bound by Eleventh Circuit precedent" even though district court would have preferred a different outcome). In any event, even if *McKinley* provides the more appropriate standard, Hutley's argument still would be rejected. As discussed

24

In this case, the parties agreed that no further evidence needed to be considered by the Court other than the stipulation of facts entered into by them.  As a result, the only evidence in the record that might support Hutley's subjective belief that he was compelled to give a statement upon threat of a job loss is the September 15 letter from Chief Deputy Long to Hutley.[4]  That letter, which afforded Hutley an opportunity to present his version of events under investigation, does not constitute the unconstitutional coercion which Hutley contends he suffered.  Being afforded an

_____

in the text, there were no threats - expressed or implied - that Hutley faced any penalty solely as a result of an election not to speak to Chief Deputy Long.

[4]    Hutley's argument in the reply brief that it "undisputed that [he] believed he had to make statements to Chief Deputy Long and the Board or he would lose his job forever," [Doc. 24 at 5], is not evidence of Hutley's subjective belief.  First, this argument was not raised in Hutley's opening brief, such that the government would have had the opportunity to rebut it.  *See Fogade v. ENB Revocable Trust*, 263 F.3d 1274, 1296 n.19 (11th Cir. 2001) (reiterating that arguments not raised in opening briefs are not properly before the court unless they truly rebut the  opposing party's contentions).

Second, statements by counsel in briefs are not evidence.  *Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980); *Nieves v. University of Puerto Rico*, 7 F.3d 270, 276 (1st Cir. 1993) ("[f]actual assertions by counsel in motion papers, memoranda, briefs, or other such 'self-serving' documents, are generally insufficient"); *Jordan v. Warehouse Services, Inc.*, 81 F. Supp. 2d 1257, 1263 n. 10 (M.D. Ala. 2000) (unsworn statement of counsel is not evidence and cannot be considered); *Bowden ex rel. Bowden v. Wal-Mart Stores, Inc.*, 124 F. Supp. 2d 1228, 1236 (M.D. Ala. 2000) ("opinions, allegations, and conclusory statements of counsel do not substitute for evidence").

25

opportunity to present one's side is not the equivalent of being compelled to speak. *Compare Vangates*, 287 F.3d at 1322 (holding that defendant satisfied the subjective belief prong that she was "compelled to give a statement upon threat of loss of job" by testifying at pretrial hearing that she believed she would have been subject to discipline if she had refused to cooperate with the County Attorney during civil trial, and that she thought the terms of the earlier *Garrity* advice applied to her testimony at the later proceeding).

Even if Chief Deputy Long's letter properly could be construed to give rise to a subjective belief in Hutley that he was compelled to give a statement or face loss of his job, this belief was not objectively reasonable. The Eleventh Circuit requires the Court to consider the totality of the circumstances surrounding the statement, and appears to place the burden of showing objective reasonableness upon Hutley. *See Vangates*, 287 F.3d at 1322 ("Vangates cannot show, however, that the belief was objectively reasonable, and this failure is fatal to her claim. In making this determination, we examine (as we must) the totality of the circumstances surrounding the testimony.") (citations omitted).

In this regard, there is no evidence in the record concerning what additional advice or warnings were given to Hutley by Chief Deputy Long or any other superior

26

officer at or before Hutley's meeting with Long.  As to the evidence in the record, the

September 15 letter did not compel Hutley to appear and give a statement, but merely

provided him with an opportunity to do so and gave him options as to how to respond

(orally, in writing, or in person).  Further, the letter did not state that his failure to make

a statement would result in the loss of his job (or any penalty, for that matter).  The

letter merely advised Hutley that Chief Deputy Long was considering recommending

his dismissal, but before he did so, he was offering Hutley the opportunity to provide

his side of the story.  Moreover, it further provided Hutley with information about an

additional forum to challenge any discharge, if that should come to pass.  [Doc. 20-1 at

3 (advising Hutley of his appeal to the FCPB "[i]f it is the final decision to dismiss,

suspend, demote or otherwise discipline you, and you feel that this action is based on

personal, political or religious reasons, or that it is not otherwise justified")].  No

reasonable reading of this language constitutes unconstitutional coercion.[5]

Accordingly, although the government asserts that it is unaware of any

statements Hutley made to Chief Deputy Long and does not intend to introduce any

---

[5]  The Court also observes that the government contends that it is unaware of any statements made by Hutley to Chief Deputy Long, and therefore, is not seeking to introduce any such statements at trial.  The undersigned's conclusion that any such statements were not coerced renders **MOOT** any discussion of the legal effect of the government's contention.

such statements, the Court resolves the issue since Hutley contends these statements were coerced and such coercion carried over into his FCPB testimony and concludes that the statements to Chief Deputy Long were not unconstitutionally coercive under *Garrity*.

  2. *Hutley's testimony before the FCPB*

  Hutley also contends that his testimony before the FCPB constitutes fruits or a continuation of his coerced statements made to Chief Deputy Long and therefore also must be excluded form his trial.  Since the Court concludes that Hutley's statements made to Chief Deputy Long were not coerced and therefore not excludable pursuant to *Garrity*, Hutley's fruits argument necessarily fails as well.

  However, there are additional reasons why the FCPB testimony is not excludable.

  Applying the test set out in *Vangates*, Hutley fails to establish that he had a subjective belief that he was compelled to waive his rights against self-incrimination in the FCPB proceeding.  His only argument is that the coercion he suffered initially carried over into the appeal of his dismissal.  For the reasons stated above, that argument is rejected.

28

Even if the record supports a conclusion that Hutley had a subjective belief that he was being compelled to give up his Fifth amendment rights, such a belief was not objectively reasonable.   In this regard, *Vangates* is illustrative.   In *Vangates*, the criminal defendant, like Hutley, was a correctional official charged with excessive force upon an inmate and making a false and misleading statement regarding the assault on the inmate. *Id.* at 1318.   Vangates was the subject of an internal affairs investigation, and as part of the investigation, was interviewed by a sergeant investigating the case. She was provided with, and signed, three documents, which in material part expressly informed her that (1) she would be subjected to discipline and possibly dismissal if she refused to answer the investigator's questions about her work performance and (2) that her statements to the sergeant could not be used against her in a subsequent criminal proceeding except for perjury, but could be used against her in relation to departmental charges. *Id.* at 1317.   The investigation was completed in 1996 and closed in 1999. *Id.*

In 1996, the inmate who was assaulted filed a civil rights suit against Vangates and the county.[6]   The county represented Vangates, except for the punitive damages claims, for which it hired separate counsel.   At the civil trial, the plaintiff introduced the investigative file which contained the tape recordings of the sergeant's interview

---

[6]         Two other deputies also were defendants.

with Vangates.  The sergeant also testified without objection to her interview with Vangates.  Vangates also testified, and answered questions about the internal affairs investigation, and did not raise any Fifth Amendment objections.  *Id.* at 1318.

Prior to Vangates' criminal trial, the district court excluded any evidence of the internal affairs investigation, but permitted the government to introduce any portion of the civil trial not referencing the internal affairs investigation.  *Id.* at 1319.[7]

After Vangates was convicted, she appealed, arguing that her statements and testimony at the civil trial were coerced under *Garrity*.  The Eleventh Circuit rejected her argument.  Among the factors which the Eleventh Circuit relied in finding that Vangates' civil trial testimony was not coercive, several are relevant to the present case. In *Vangates*, the defendant was subpoenaed to testify by the plaintiff's lawyer, a non-state actor, and no statute required her to appear at the trial.  *Id.* at 1324.  Here, Hutley voluntarily appealed the discharge decision; no state action compelled his appearance before the FCPB.  While Hutley argues that he had a right to appeal to challenge his discharge and that his discharge was to be final until he appealed, the County did not compel him to appeal or to challenge his discharge.  Similarly, there is no evidence in

---

[7]        In fact, none of the civil trial testimony was admitted at trial.  *Vangates*, 287 F.3d at 1319 n.6.

30

the record that he was advised or required to waive his right to remain silent in order to appeal Sheriff Jackson's discharge decision.  Both chief Deputy Long and Sheriff Jackson's letters merely advised Hutley of his tight to appeal; they did not compel him to file an appeal or, if he did, to waive his Fifth Amendment rights.

Next, there is no evidence in the record that any member of the FCPB or the county attorney advised Hutley that he was required to testify at the appeal hearing or waive his Fifth Amendment protections.  In fact the record demonstrates that Hutley's presentation at the FCBP was wholly voluntary:

> Judge:                 Okay, the uh, this is the appellant[']s opportunity to
>                          go forward[.]
> . . .
> [Hutley's lawyer]: Let's go forward.  Officer Hutley.

[Doc. 22-2 at 1].  Hutley then was sworn and examined by his own lawyer, before being cross-examined by the county's attorney and an FCPB member.

Finally, during the FCPB proceeding, Hutley was represented by his own private counsel.  As the *Vangates* Court held:

> Indeed, the very fact that Vangates had separate counsel in this case makes it even less likely that she was compelled to testify by the County or the state.  Private counsel owed a duty to Vangates, not to the County which hired her.  Moreover, the attorney was available to consult with Vangates throughout the proceedings if she felt compelled to give testimony in contravention of her Fifth Amendment right.  Simply put, separate legal

31

> representation is still another powerful indicator that state action did not drive Vangates to testify at the civil trial.

*Vangates*, 287 F.3d at 1324.  Since Hutley was represented before the FCPB and in fact was called by his own lawyer as a witness at the proceeding is strong if not irrefutable evidence that Hutley's testimony at the FCPB hearing was freely and voluntarily given. As a result, Hutley's Fifth Amendment rights under *Garrity* were not infringed.

### Conclusion

For all the above and foregoing reasons, the undersigned **RECOMMENDS** that Defendant Hutley's motion to suppress evidence related to the Defendant's testimony at a job-related disciplinary hearing, [Doc. 18], be **DENIED**.

The Court has now ruled on all pretrial motions and has not been advised by the parties of any impediments to the scheduling of a trial.  Accordingly, this action is **CERTIFIED READY FOR TRIAL**.

**IT IS SO RECOMMENDED AND CERTIFIED**, this the 27th day of August, 2010.

_____
**ALAN J. BAVERMAN**
**UNITED STATES MAGISTRATE JUDGE**

32